**GROUP LIFE AND HEALTH INSURANCE COMPANY, Appellant,**

v.

**Howard TURNER, Appellee.**

**No. 20502.**

Court of Civil Appeals of Texas, Dallas.

May 19, 1981.

Rehearing Denied June 24, 1981.

Gary W. Maxfield, Elliott, Churchill, Hansen, Dyess & Maxfield, Dallas, for appellant.

Thomas R. Needham, Ford, Livingston & Needham, Dallas, for appellee.

Before CARVER, STOREY and STE-PHENS, JJ.

STEPHENS, Justice.

This case arose when an insurance company discontinued paying monthly disability benefits to an insured on the theory that the insured was no longer disabled. The principal question is whether the insurance company repudiated the contract. The jury found repudiation and judgment was rendered in favor of the insured for accrued installments, future installments discounted to present value, statutory penalty, and attorney's fees. We conclude that the evidence is sufficient to support the finding of repudiation, and affirm in part, and reverse and remand in part.

Howard Turner, the insured, was injured in February 1976. He was paid regular monthly benefits through March 1977. By a letter of April 14, 1977, Turner was advised by Group Life and Health Insurance Company, the carrier, that it appeared he no longer qualified under the disability clause of the contract, and that his monthly benefits were discontinued. Turner sued Group Life seeking to recover unpaid monthly benefit installments, the present value of future installments, 12 percent statutory penalty, and reasonable attorney's fees. In the event of disability, the policy provided monthly benefits equal to 50 percent of his base salary, with maximum benefits payable to age 65. Judgment was rendered on the jury's findings for $6,541.36 for accrued installments up to and including the date the verdict was returned, $65,-725.35 for future installments, matured and discounted to present value, $8,672.01 as a statutory penalty, and for the sum of $24,-064.83 as reasonable attorney's fees.

Group Life contends, under its first three points of error that there is no evidence, and alternatively, insufficient evidence to support the jury's findings that it had repudiated the insurance contract. We disagree.

The doctrine of repudiation or anticipatory breach of a contract is well established in Texas. *Pollack v. Pollack*, 39 S.W.2d 853 (Tex.Comm'n App.1931, holding

approved), *affirmed* on rehearing, 46 S.W.2d 292 (1932). The terms "repudiation" and "anticipatory breach" are used somewhat interchangeably by our courts and are defined as follows:

> In Texas, where "a party * * * obligated by contract to make monthly payments of money to another absolutely repudiates the obligation without just excuse, the obligee is entitled to maintain his action in damages at once for the entire breach, and is entitled in one suit to receive in damages the present value of all that he would have received if the contract had been performed.' "

*Universal Life & Accident Insurance Co. v. Sanders,* 129 Tex. 344, 102 S.W.2d 405 (1937). Repudiation consists in "such words or actions by a contracting party as indicate that he is not going to perform his contract in the future." Williston, "Repudiation of Contracts," 14 Harv.L.Rev. 317 (1901). It is conduct which shows a fixed intention to abandon, renounce, and refuse to perform the contract. *Moore v. Jenkins,* 109 Tex. 461, 211 S.W. 975 (1919).

Thus, we must determine if the acts of Group Life were sufficient to show its fixed intent to abandon, renounce, and refuse to perform its contract, and thus repudiate it, as found by the jury, or whether Group Life merely discontinued monthly benefits to Turner on a mistaken belief that he was no longer disabled, which fact would not support a finding of repudiation.

■ In our review of the evidence, we find the record replete with testimony detailing the contents of telephone calls made by Turner to Group Life after his monthly benefits were stopped. He tried to prevail upon Group Life to reconsider his status by offering to submit himself to different doctors for examination, and to provide additional medical reports for Group Life's evaluation. The effect of his testimony was that, despite his persistence, Group Life refused to reconsider his status and finally told him to quit calling because his file was closed. Although Turner could not identify by name the persons at Group Life with whom he talked on each occasion, he did

testify that the persons with whom he talked were familiar with his case, and further that each call was initiated by his calling Group Life's business telephone and talking with the party to whom he was referred by the operator. We hold that this testimony satisfies the general rule of evidence that the contents of a telephone conversation may be admitted if the call is made to a business office over a line maintained by it for business purposes, and if the conversation is deemed to be with an authorized person, in the absence of proof to the contrary. *Gleason v. Davis,* 289 S.W.2d 228 (Tex.1956).

■ Contrary to Turner's evidence, Group Life takes the position that from the medical report submitted to it by Turner's treating physician, Dr. Donaldson, it was entitled to conclude that Turner was no longer disabled under the terms of the policy, and thus its discontinuance of the monthly benefits was due to a mistake or misunderstanding as to the fact of Turner's disability, and not a repudiation of the insurance contract. A letter dated April 14, 1977, was sent Turner by Group Life stating that, after a review of the medical file and a letter from Dr. Donaldson, it appeared that he no longer qualified for benefits under the policy. The letter further stated that Group Life would be happy to review any further medical information that he cared to submit.

Group Life's employee Karen Newton, an assistant manager, testified that she handled Turner's claim. She further stated that she did not recall talking to Turner but that she would never tell any claimant that their file was closed and regardless of their future physical condition, their claim would be denied. Mrs. Newton also testified that she stopped the monthly installments prior to notifying Turner or asking him if he were totally disabled, basing her decision solely on Dr. Donaldson's letter.

Another Group Life employee, Mary Carroll, testified that she would never tell a claimant that the company would not pay future benefits, no matter what, and further that she did not know if she had spo-

ken with Mr. Turner. Thus, neither employee of Group Life denied that they had talked to Turner, but denied that they would ever tell a claimant that the company would refuse to consider his claim at a future date, or that it would fail to consider additional medical evidence. When testimony is conflicting, it is the province and duty of the jury to reconcile the conflicts and in doing so, they may believe or disbelieve the evidence, or believe part and reject part. *Creech v. Thompson*, 156 Tex. 561, 297 S.W.2d 817 (1957); *Southwestern Bell Telephone Co. v. Griffith*, 575 S.W.2d 92 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n. r. e.). In this case, having been instructed that "repudiation consists of such words or actions by a contracting party as indicates that he is not going to perform his contract in the future; it is conduct which shows a fixed intention to abandon, renounce, and refuse to perform the contract without just cause" the jury had before it sufficient, although conflicting evidence, and they chose to believe Turner. We overrule Group Life's first three points of error.

■ Group Life next complains that the court erred in failing to submit its proposed instruction; that "mere refusal, upon mistake or misunderstanding as to matters of fact or upon erroneous construction of the disability clause, to pay a monthly benefit when due does not amount to renunciation or repudiation of the insurance policy and does not amount to an anticipatory breach of the insurance policy." We disagree. We hold that the court's definition is reasonably clear to adequately define the term repudiation. A court need not give both an affirmative and a negative definition of the same term. *Buchanan v. American National Insurance Co.*, 446 S.W.2d 384 (Tex.Civ.App.—El Paso 1969, writ ref'd n. r. e.). We overrule this point of error.

■ Group Life next contends that no judgment should be entered against it for "future installments" because no damage issue was submitted. We first note that Group Life made no objection to the failure of the trial court to submit a damage issue. Thus, Group Life has waived this complaint and if there is evidence to support damages, this omitted issue shall be deemed as found by the court in such manner as to support the judgment. Tex.R.Civ.P. 274, 279.

■ We now turn to the record to determine if there is evidence to support this finding. We find the following facts undisputed: the amount of the monthly installments due under the contract; the sum of past installments paid; the sum of installments paid into the registry of the court; and Turner's age. The parties stipulated that Turner was totally disabled at the time of trial and the jury found that such total disability was permanent. These facts are all that are necessary to mathematically compute the unpaid installments due for the term of the contract. Once this mathematical computation is determined, the sum determined must then be reduced to present value by applying a reasonable rate of interest as the discount factor. Although Group Life argues that evidence must be offered from which "present value" may be determined, such argument is untenable. Our supreme court has held that interest rates are matters of common knowledge in the community, and that such matters of common knowledge may be considered as proven by a jury without the submission of evidence. *Missouri Pacific Railroad Co. v. Kimbrell*, 334 S.W.2d 283 (Tex.1960); *Look v. Werlin*, 590 S.W.2d 526 (Tex.Civ.App.—Houston [1st Dist.] 1979, no writ). Thus, in our case as to the question of future installments, discounted to present value, the trial judge became the trier of this fact. *Colonial Savings Association v. Taylor*, 544 S.W.2d 116 (Tex.1976). Having held that the evidence is sufficient, it follows that the trial judge may determine the interest figure to apply in arriving at present value, which he found to be $65,725.35. We overrule these points of error.

Group Life further argues that credit should have been given for amounts paid or payable under the Federal Social Security program against monthly benefits to accrue in the future. We disagree. The record reflects the defendant was not receiving Social Security Disability benefits because

the Social Security Administration had determined him to be ineligible. Under these facts, the trial court could not allow credits for a nonexistent future benefit. Additionally, the record shows that all past Social Security benefits received by Turner were offset against his monthly benefits. We overrule this point of error.

■ Next, Group Life argues that no issue as to reasonable attorney's fees should have been submitted; that there is no probative evidence to establish the amount of reasonable attorney's fees; and that attorney's fees are not recoverable as a matter of law. We agree that the evidence does not support the finding. Turner sought attorney's fees under Tex.Ins.Code Ann. art. 3.62 (Vernon Supp. 1963–1980). Although we have found repudiation of the contract by Group Life, reasonable attorney's fees are recoverable in a case of this nature under article 3.62. However, the only testimony offered as to reasonable attorney's fees was the testimony of a practicing attorney in Van Zandt County who testified that in that county it was usual and customary for an attorney to handle a case such as this on a one-third contingent fee basis, and that one-third of the recovery in this case would be reasonable. Such evidence will not support an award of attorney's fees under article 3.62. This precise point was decided by the court in *Prudential Insurance Company of America v. Uribe*, 595 S.W.2d 554 (Tex.Civ.App.—San Antonio 1979, writ ref'd n. r. e.). The court held that evidence concerning the reasonableness of a contingent fee contract in an action under article 3.62 was "no evidence" and would not support a jury finding. The court further held that article 3.62 authorizing the recovery of reasonable attorney's fees contemplates the recovery of "such a fee as would be reasonable for a litigant himself to pay his own attorney for prosecuting the case, and not a speculative or contingent fee based upon the uncertainty of the litigation."

Although in this case the evidence as submitted will not support an award of reasonable attorney's fees, under article 3.62, they are nevertheless recoverable. For guidance we look to *International Security Life Insurance Co. v. Finck*, 496 S.W.2d 544 (Tex.1973) where suit was brought to recover hospital expenses, statutory penalty, attorney's fees, and actual and exemplary damages for deceit in connection with the issuance of the policy. The court found that the evidence submitted in support of attorney's fees was evidence of the attorney's services in prosecuting the fraud and deceit cause of action and not on the claim under the insurance policy. Therefore, such evidence was "no evidence" to support the jury's findings. However, since reasonable fees were recoverable under article 3.62, the court severed the claim for attorney's fees and remanded to the trial court for a hearing to determine the proper attorney's fees recoverable. *See Woods Exploration and Producing Co. v. Arkla Equipment Co.*, 528 S.W.2d 568 (Tex.1975). Thus, we sever the claim for attorney's fees and remand to the trial court for a determination of a reasonable attorney's fee.

■ Group Life also contends that no recovery of an attorney's fee may be had for anticipatory breach of an insurance policy because article 3.62 of the Texas Insurance Code pertains only to recovery for a loss under a policy of insurance. We disagree. In *Continental Casualty Co. v. Boerger*, 389 S.W.2d 566 (Tex.Civ.App.—Waco 1965, writ dism'd), the court held that a suit for anticipatory breach of an insurance contract is not a suit on a policy, but nevertheless is one under the statute authorizing recovery of damages and penalties when a loss occurs and the insurance company "shall fail to pay the same." Likewise, in our case, the damages sought are for a loss incurred by reason of Group Life's failure to pay a claim for which it is liable; thus, we hold that attorney's fees and the twelve percent (12%) penalty as provided in article 3.62 are applicable. *See International Security Life Insurance Co. v. Maas*, 458 S.W.2d 484 (Tex.Civ.App.—Houston [1st Dist.] 1970, writ ref'd n. r. e.). We overrule this point of error.

Finally, Group Life complains of the award of $6,541.41 for accrued installments due, because prior to trial it tendered such sum into the registry of the court. This argument is without merit. It is obvious that the trial court granted judgment against Group Life instead of ordering this sum paid out of the registry of the court and did not award Turner a double recovery. We overrule this point of error.

The judgment of the trial court awarding judgment for accrued installments, future installments, matured and discounted to present value, plus statutory penalty is affirmed. The judgment awarding attorney's fees is reversed. The attorney's fee claim is severed and remanded to the trial court for further proceedings to determine a reasonable attorney's fee.